(No. 7067. March 25, 1943.)

FRANK C. DAWSON, ROBERT DAWSON, MILLARD DAWSON and JAMES DAWSON, Appellants, v. SALT LAKE HARDWARE COMPANY, a corporation, STEPHEN S. LYNCH and MABEL M. BELLVILLE, Respondents.

[136 Pac. (2d) 733.]

Rehearing denied May 10, 1943.

O. W. Witham and Roy E. Smith for appellants.

J. H. Blandford and Harry Benoit for respondents Salt Lake Hardware Company and Stephen S. Lynch.

J. F. Martin for respondent Mabel M. Bellville.

HOLDEN, C.J.—On the evening of October 31, 1941, the Business and Professional Women's Club of Twin Falls, Idaho, held a Halloween party at the home of one of its members about a mile north of Hansen, Idaho, on what is locally known as the Hansen Bridge Road. Respondent, Mabel M. Bellville, drove her car to this party taking along with her, as gratuitous guests, Mrs. Ella P. George, Mrs. Bessie Weinrich, Mrs. Temple Dawson and Mrs. Belle Green. Respondent and her guests left the party at about 11:00 o'clock p. m. On the return trip, Mrs. George rode in the front seat with respondent Bellville, driver of the Bellville car. In the rear seat were Mrs. Weinrich, Mrs. Green and Mrs. Dawson, the latter sitting between Mrs. Weinrich and Mrs. Green. Respondent Bellville drove south from the party to the corner at Hansen where U. S. Highway No. 30 and the Hansen Bridge Road intersect. It was a rainy, misty, dark night. Almost immediately after entering the intersection, the Bellville car was struck by another car driven by respondent Stephen S. Lynch, employed by the Salt Lake Hardware Company as a travelling salesman. As a result of the injuries sustained, Mrs. Dawson died shortly after the accident.

December 15, 1941, this action was commenced by Frank C. Dawson, surviving husband of the said Temple Dawson, joined by Robert Dawson, Millard Dawson and James Dawson, children of Frank C. and Temple Dawson, against the Salt Lake Hardware Company, Stephen S. Lynch and Mabel M. Bellville to recover both general and special damages alleged to have been sustained as a result of the death of

said Temple Dawson. Plaintiffs sought to recover against respondent Bellville under Sec. 48-901, I. C. A. [our guest statute], and against respondents Salt Lake Hardware Company and Stephen S. Lynch on the ground of negligence.

The cause was tried by the court, sitting with a jury, commencing May 25, 1942. May 28, 1942, the jury returned a verdict in favor of defendants and respondents, and on the same day judgment was entered thereon "that plaintiffs take nothing under and by virtue of their complaint filed herein and said complaint be, and it is, hereby dismissed." From this judgment and an order denying a new trial, plaintiffs appeal.

It is first contended by appellants "The court erred in instructing the jury in its instruction No. 15 to the effect that although the plaintiffs did not claim that defendant Bellville intentionally injured Temple Dawson, they could not find for the plaintiffs unless they found from the evidence that defendant Bellville in operating her automobile, in which decedent Temple Dawson was riding as a guest, was guilty of such an act of conscious indifference that they would be justified in finding that she wilfully injured Temple Dawson, and that reckless disregard, wilfull disregard and wanton disregard are equivalent and synonymous terms."

By instruction No. 15, the trial court instructed:

"You are instructed, Gentlemen, that Sec. 48-908, [48-901] Idaho Code Annotated as amended by Chap. 160 of the Idaho Session Laws of 1939, provides as follows:

" '*Liability of Motor Owner to Guest*. No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of the said owner or operator or caused by his intoxication or his reckless disregard of the rights of others.' In this case there is no claim or contention upon the part of the plaintiffs that Mabel M. Bellville intentionally injured Temple Dawson or that she was intoxicated. You will, therefore, disregard these two elements. The only theory, Gentlemen, upon which you could then return a verdict against Mabel M. Bellville would be because of her reckless disregard of the rights of Temple Dawson. The phrase or term 'reckless

disregard' as used in the guest statute above quoted means an act destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong, rash; an act of such conscious indifference to consequences that the jury is justified in saying that the driver wilfully injured his guests. Reckless disregard, wilful disregard and wanton disregard are, gentlemen, equivalent and synonymous terms."

After having so instructed the jury the trial court gave the further instruction that:

"Before the plaintiffs can recover from the defendant Mabel M. Bellville, they must not only prove that she was negligent, but they must prove by a prepondance of the evidence and to your satisfaction that she acted with reckless disregard of the rights of the said Temple Dawson, deceased, and that her reckless disregard of the rights of Temple Dawson was a proximate cause of the injuries to and subsequent death of Temple Dawson. In other words, Gentlemen, you can not find against the defendant Mabel M. Bellville merely because you may believe from the evidence that she may have been negligent in one or more particulars charged in the complaint; this is not sufficient. A guest in a car cannot recover against his host merely because of negligence of the host. The negligence must amount to a reckless disregard to the rights of the guest as that term has been defined to you in these instructions."

It will be noticed the court expressly, and we thing correctly, by the last above-quoted instruction, instructed the jury appellants could recover against respondent Bellville if they proved by a preponderance of the evidence she drove her car with a reckless disregard of the rights of her guest, Temple Dawson. The court further instructed the jury it had "not attempted to embody all the law in this case in any one instruction. In considering any single instruction you must consider it in connection with all other instructions and construe them in harmony with each other. You are not at liberty to single out a particular instruction and base your verdict upon it alone." Hence, the jury, reading instruction No. 15 and the above-quoted instruction together, as the court instructed it to do, could not have understood "they [the jury] could not find for the plaintiffs unless they found from the evidence that defendant Bellville in operating her automobile, in which decedent Temple Dawson was riding as a guest, was guilty

of such an act of conscious indifference that they would be justified in finding that she wilfully injured Temple Dawson." Nor could the jury have understood, as argued by appellants, they could not find for appellants unless "they would be justified in finding that she [respondent Bellville] wilfully injured Temple Dawson," for the additional reason that the court (in instruction No. 15) expressly defined the phrase "reckless disregard" "as used in the guest statute to" mean "an act destitute of heed or concern for consequences." In other words, the court instructed the jury that "an act destitute of heed or concern for consequences" was the equivalent of and would amount to an act of "reckless disregard of the rights of Temple Dawson" as the phrase "reckless disregard" is used in our guest statute.

Appellants, in attempting to recover against the Salt Lake Hardware Company and Stephen S. Lynch, charged negligence in the operation of that company's car, and that company and Lynch, by joint answer, charged respondent Bellville was guilty of contributory negligence and that such contributory negligence "was imputed to and became the contributory negligence of the said Temple Dawson," and respondent Bellville, by separate answer, pleaded contributory negligence on the part of Temple Dawson. That necessitated the giving of the following instruction pointing out the different rules applicable to respondents Lynch and the Hardware Company on the one hand, and respondent Bellville on the other:

"I want to again call your attention, Gentlemen, to the different rules of law applicable to the defendants Salt Lake Hardware Company, a corporation and Stephen S. Lynch on the one hand and Mabel M. Bellville on the other. Before the plaintiffs can recover against the defendants Salt Lake Hardware, a corporation and Stephen S. Lynch, they must prove by a preponderance of the evidence and to your satisfaction that the said defendant Stephen S. Lynch was negligent in one or more particulars, which negligence was a proximate cause of the injuries and subsequent death of Temple Dawson. On the other hand, Gentlemen, before the plaintiffs can recover from the defendant Mabel M. Bellville, they must not only prove that she was negligent, but they must prove by a preponderance of the evidence and to your satisfaction that she acted with reckless disregard of the rights of the said Temple Dawson, deceased,

and that her reckless disregard of the rights of Temple Dawson was a proximate cause of the injuries to and subsequent death of Temple Dawson."

Appellants having charged negligence against the Hardware Company and Lynch, and that company, Lynch and Bellville having pleaded contributory negligence, as above pointed out, the trial court instructed the jury (instructions Nos. 6, 8, 20 and 21) on negligence and contributory negligence. Appellants contend the court erred in giving such instructions in that "neither negligence or contributory negligence is an issue in the case, and contributory negligence of deceased, if such existed, would constitute no defense." That the court, appellants having charged negligence against Lynch and the Hardware Company, and' negligence (if any) being the only ground upon which appellants could recover against the Hardware Company and Lynch, properly instructed the jury on negligence, cannot be successfully challenged. As to whether the court erred in instructing the jury on contributory negligence, the record discloses appellants requested certain instructions, from which we excerpt the following:

"* * * if you find from the evidence adduced from the trial, of this case, that the defendant, Mabel M. Bellville, had invited Temple Dawson to ride in her car as her guest on the occasion in question and that the manner and method of operation of said automobile by said defendant Mabel M. Bellville, *was in a reckless disregard to the rights of others* and increased the traveling hazards of the said Temple Dawson, *and that because thereof, without any fault of said guest,* said Temple Dawson was injured and as a result thereof died, then in that case your verdict should be in favor of the plaintiffs said defendant, Mabel M. Bellville."

* * *

"You are instructed, Gentlemen, that if you find from the evidence adduced upon the trial of this case that Temple Dawson was riding as an invited guest in the back seat of the automobile driven by said defendant, Mabel M. Bellville, you are not to consider in your deliberations any act of said Temple Dawson at the time of the accident in question, unless you further find, that at the time and place of the accident, said Temple Dawson was exercising control over the automobile or over the driver, and further *unless the*

*acts or the failure to act,* if such was a fact, *on the part of said Temple Dawson, contributed directly to the accident, and was the approximate cause thereof.*" [Emphasis ours.]

It thus appears appellants requested an instruction submitting to the jury the question as to whether Temple Dawson had, by any "acts or the failure to act," "contributed directly to the accident." Where, as here, appellants themselves requested an instruction on contributory negligence and the parties tried the case in the lower court upon the theory contributory negligence was a defense and the parties on the trial below requested specific instructions relative to contributory negligence, a contrary contention cannot be asserted for the first time on appeal. "Litigants must present the issues in this court on the same theory they were presented in the lower court." (*French v. Tebben,* 53 Ida. 701, 706, 27 P. (2d) 474; *Rollefson v. Lutheran Brotherhood,* 132 P. (2d) 758; *Gibbs v. Claar,* 58 Ida. 510, 519, 75 P. (2d) 721; *Aetna Cas. & Sur. Co. v. Wedgwood,* 57 Ida. 682, 687, 69 P. (2d) 128; *Idaho Gold Dredging Corp. v. Boise Payette L. Co.,* 52 Ida. 766, 776, 22 P. (2d) 147.)

In the case at bar the trial court, substantially in the language of the statute, instructed the jury on the law of the road. These instructions stated the law and are correct so far as they went and were not confusing or misleading. If appellants had desired other instructions on Subd. 3, of Sec. 48-504, I. C. A., it was their duty to present them to the trial court. (*Owen v. Taylor,* 62 Ida. 408, 415, 416, 114 P. (2d) 258. See also *Evans v. Davidson,* 58 Ida. 600, 615, 616, 77 P. (2d) 661.) And if appellants desired an instruction the law presumed Temple Dawson exercised due care and caution for her own safety, they should have requested such an instruction.

Appellants insist "the verdict of the jury is contrary to the law and the evidence" as to both respondents Lynch and Bellville, contending as to respondent Lynch that he "was guilty of negligence which directly concurred in causing Temple Dawson's fatal injury in that while passing along and over the last 50 feet of U. S. Highway 30 east of and approaching its intersection with Hansen Bridge Highway, where his view to the north along the intersecting highway was obstructed at least part of the time by a filling station structure situated northeast of the intersection, sufficiently to prevent a clear and uninterrupted view of Hansen Bridge Highway for a distance of 200 feet

north of the intersection, he drove in excess of 15 miles per hour."

The trial court, in the language of Subds. "a", "b" and paragraph 3 of Sec. 48-504, I. C. A., instructed the jury:

" 'a. Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person.

" 'b. Subject to the provisions of subdivision a. of this section and except in those instances where a lower speed is specified in this chapter, it shall be prima facie lawful for the driver of a vehicle to drive the same at a speed not exceeding the following, but in any case when such a speed would be unsafe it shall not be lawful.

" '3. Fifteen miles an hour when approaching within fifty feet and in traversing an intersection of highways when the driver's view is obstructed. A driver's view shall be deemed to be obstructed when at any time during the last fifty feet of his approach to such intersection, he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection;' "

This court construed the above-quoted Subds. "a", "b" and paragraph numbered 3, in *Brixey et ux v. Craig*, 49 Ida. 319, 323, 324, 288 P. 152, where, as in the case at bar, it was argued that speed in excess of 15 miles an hour constituted negligence *per se*. We held to the contrary pointing out:

"This court has frequently held that for one to violate a positive statutory inhibition is negligence *per se,* and not merely *prima facie* evidence of negligence. We do not question that rule.

"Here, however, we are not dealing with a positive statutory inhibition. It is not made absolutely unlawful to approach an intersection, the view of which is obstructed, at a rate of speed greater than fifteen miles per hour, but this is prima facie unlawful, and we think it follows that if it is not absolutely unlawful it cannot be said to be

absolutely negligent. We think it makes a *prima facie* case of negligence.

"The presumption is that one approaching such an intersection at a rate of speed greater than fifteen miles per hour is doing so in violation of law and the presumption is that he is guilty of negligence, not less and not more than that. With the burden shifted by this presumption, *negligence is still an issuable fact.* [Last emphasis ours.]

"The statutory law of Idaho on this subject, and the basic Uniform Act similar, adopted in many other states, apparently evade positive iron-clad rules, indeed this flexibility dependent upon different conditions is conspicuous. Courts interpreting these statutes in other states recognize that feature, and we think rightly so."

\* \* \*

"We think the questions of negligence and contributory negligence, from the facts and circumstances in evidence in this case, were issues for the jury." [Cited and approved in *Hamilton v. Carpenter*, 49 Ida. 629, 290 P. 724.]

The evidence in the case at bar as to what happened immediately prior to and at the time of the accident is voluminous. The facts and circumstances were inquired into to the last detail. While unquestionably there is ample, substantial evidence to support the verdict of the jury as to respondent Bellville, the evidence as to whether respondent Lynch was negligent, as charged in the complaint, is close. We are firmly committed to the rule that where, as in the case at bar, the evidence is either conflicting, or where on undisputed facts reasonable and fair minded men might differ as to the conclusion to be drawn, or where different conclusions might reasonably be reached by different minds, the question of negligence is one of fact to be submitted to the jury. (*Call v. City of Burley*, 57 Ida. 58, 69, 62 P. (2d) 101; *Fleenor v. Oregon Short Line R. R. Co.*, 16 Ida. 781, 102 P. 897; *Bennett v. Deaton*, 57 Ida. 752, 68 P. (2d) 895; *Evans v. Davidson*, 58 Ida. 600, 77 P. (2d) 661; *Nelson v. Inland Motor Company*, 60 Ida. 443, 92 P. (2d) 790; *Byington v. Horton*, 61 Ida. 389, 102 P. (2d) 652.) In *Nelson v. Inland Motor Co.*, p. 448, supra, we pointed out: "It is only where the evidence is clearly and wholly against the finding of the jury or where some essential fact necessary to establish liability has not been proven, that this court can interfere."

It follows the judgment must be affirmed, and it is so ordered, with costs to respondents.

AILSHIE, J. (Concurring specially)—I thing a part of instruction 15 was misleading and probably confusing to the jury and especially the italicized part of the following, which is contrary to my understanding of the words *"reckless disregard* of the rights of others"*:

"In this case there is no claim or contention upon the part of the plaintiffs that Mabel M. Bellville intentionally injured Temple Dawson or that she was intoxicated. You will, therefore, disregard these two elements. The only theory, Gentlemen, upon which you could then return a verdict against Mabel M. Bellville would be because of her reckless disregard of the rights of Temple Dawson. The phrase or term 'reckless disregard' as used in the guest statute above quoted means an act destitute of heed or concern for consequences; especially foolishly heedless of danger, headlong, rash; *an act of such conscious indifference to consequences that the jury is justified in saying that the driver wilfully injured his guests. Reckless disregard, wilful disregard and wanton disregard are, gentlemen, equivalent and synonymous terms."*

The underscored portion of the foregoing quotation from instruction 15 appears to define the word "reckless" as the equivalent of "wilful", "conscious", or "wanton." Of course the word "reckless" conveys a different meaning when used in connection with some kinds of transactions as distinguished from others. The connection and circumstance under which it is used must give color and substance to its meaning. Where, however, the word is used with reference to the driver of a guest car, in relation to the guest himself in the car, it can hardly be said that "reckless" includes *wilful, intentional,* or *done on purpose.* If so intended, there would have been no reason for retention of the word "reckless"; nor would the legislature have deleted from the statute the words, "gross negligence" by the 1939 amendment. (Sec. 48-901, I. C. A., as amended, '39 S. L., Chap. 160, p. 286.) It is evident, to my mind, that the legislature by the use of the word "reckless" following the word "intentional" meant to hold the driver liable for a lesser degree of negligence, than an "intentional" act. A driver may accomplish the same result, however, by driving in a *manner* or at a *speed* that is dangerous (reckless), and

yet do so with no special purpose to injure his guest or himself, or intent other than to be going wherever and however he pleases, regardless of results.

The word "reckless", as used in this statute (Sec. 48-901, I. C. A., as amended by Chap. 160 of the '39 Sess. Laws), is, in my opinion, not used as synonymous with "conscious indifference", "wilful disregard", or "wanton disregard" of the rights of a guest. Ordway, on Synonyms and Antonyms, gives the synonyms and antonyms of the word "reckless" as follows:

"*Mindless*, negligent, *thoughtless, regardless, unconcerned, inattentive,* remiss, improvident, rash, inconsiderate.

"Ant. Circumspect, careful, wary, *thoughtful, mindful, attentive, considerate,* provident, prudent, *calculating.*" (Italics inserted.)

It will be observed that none of the foregoing carries the thought of reckless necessarily being intentional or purposely; but each rather conveys the idea of being the contrary, without thought or care for consequences, as indicated by the antonyms enumerated.

I do not consider the decision in *Ellis v. Ashton St. Anthony P. Co.*, 41 Ida. 106, 116, 238 P. 517, discussing the meaning of the word "reckless", at all applicable to this case. That was an action for damages for wrongful death of a minor, caused by the negligent and reckless maintenance of an electric transmission line. The rule governing the maintenance of such dangerous agencies is very different from that applying to the driver of a guest car.

Notwithstanding the foregoing observations as to what seems to me to be an erroneous part of the instruction given, I am not prepared to say that, under the circumstances of this case, it was substantially prejudicial to the plaintiff's case. I am rather inclined to the belief that the verdict would have been the same as to the plaintiff's right of recovery *against Mabel Bellville*, had the italicized part of the instruction above noted been omitted.

I am authorized to say that Justices Givens and Dunlap concur in the foregoing views.