Tracy JACKSON, Plaintiff-Appellee,

v.

CONTINENTAL BANK & TRUST COM-
PANY, Administrator, Estate of Har-
vey Edwin Serfass, Jr., Deceased, De-
fendant-Appellant.

No. 320–70.

United States Court of Appeals,
Tenth Circuit.

June 16, 1971.

Clifford L. Ashton and Thomas M. Burton, Salt Lake City, Utah (Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the brief), and Ken Chamberlain, Richfield, Utah (Olsen & Chamberlain, Richfield, Utah, on the brief), for plaintiff-appellee.

Glenn C. Hanni, Salt Lake City, Utah (Strong & Hanni, Salt Lake City, Utah, on the brief), for defendant-appellant.

Before BREITENSTEIN, McWILLIAMS and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This case involves an automobile collision which occurred near Richfield, Utah, on March 18, 1966. The plaintiff, who was riding in the back seat of a Volkswagen automobile, was seriously injured but did survive the accident, whereas the owner of the car, Harvey Edwin Serfass, and Mary Gay Sparks,

other passengers in the car at the time, were killed. The Continental Bank & Trust Company was appointed administrator of the decedents' estates and defended the action.

Following a trial which presented many legal obstacles, the plaintiff obtained a judgment against the bank as administrator of the estate of Serfass in the amount of $5,359.95 special damages and $20,000.00 general damages. Subsequently, the total judgment was reduced in the amount of $7,000.00 to reflect the settlement which was made in the action against the co-defendant Kroskob. Judgment was entered accordingly, and the bank is the appellant in the present proceedings.

The plaintiff was a close friend of Mary Gay Sparks, both of them having been students at Colorado Woman's College. On the other hand, she was only slightly acquainted with the decedent Serfass. The two girls had met him a short time previously on the ski slopes. They made arrangements with Serfass to travel to California with him in his Volkswagen starting on March 17. Plaintiff's object in making the trip was to visit her grandmother, and Mary Gay Sparks intended to visit her fiance. No social overtones are apparent from the evidence that is before us. On the evening of March 17 the two girls, together with Serfass, left Colorado in the latter's car.

According to the testimony of plaintiff, Serfass drove all that night while she sat in the passenger seat beside him. When they reached Hanksville, Utah, they stopped for gasoline and ate breakfast. Sparks paid for the gasoline and plaintiff paid the breakfast check. Thereafter, Sparks drove and plaintiff got into the back seat and went to sleep, whereas Serfass sat in the front passenger seat.

At about 11:30 a. m. the Volkswagen collided with another vehicle at the intersection of Highway 22 and Highway 89 in southern Utah. It had been proceeding west when it collided with a car

driven by Helen Kroskob, who had been proceeding in a northerly direction on Highway 89. All three occupants of the Volkswagen were thrown from the car. Plaintiff was knocked unconscious and remained so for a month after the accident. According to the testimony of a witness who had been following the Chevrolet, the Volkswagen had been going fast and had run the stop sign. Other testimony consisted of that of an officer of the Utah Highway Patrol who testified that in his opinion Sparks had been driving the car and Serfass had been sitting in the right front seat, and that plaintiff was in the back seat. This opinion was based on an analysis of the wreckage and the injuries. His opinion coincided with testimony of plaintiff.

The defendant failed to offer any testimony, and consequently the evidence offered on behalf of plaintiff was not refuted. Extensive discovery failed to develop evidence different from that offered by or on behalf of the plaintiff, and it would appear that this was a truthful account. The several trial problems mentioned above included:

1. Whether the Utah Deadman Statute applied and, if so, whether it prevented the plaintiff from giving testimony as to the events leading up to the collision insofar as she was able to furnish testimony on the subject.

2. The applicable guest statute and determination of burden of proof as to whether the plaintiff was a guest. The trial judge charged the jury that the burden rested on defendant to establish that plaintiff was a guest and was thus barred from recovery.

3. Sufficiency of the evidence to justify submission of the question of guest or passenger to the jury.

4. Failure of the trial judge in his charge to define agency; to instruct the jury as to the legal consequences of a finding by the jury that Sparks, while driving the vehicle, was an agent of Serfass.

5. Finally, whether the Utah survival statute prohibited a recovery. This provision prohibits an injured person from recovering except upon some competent evidence other than the testimony of the injured person.

I.

At the trial the defendant objected to several items of testimony given by plaintiff, including the following:

(1) The seating arrangement when the Volkswagen left Colorado on the evening of March 17, 1966.

(2) That Serfass was driving when the Volkswagen left Colorado.

(3) That Sparks paid for a tank of gas in Hanksville, Utah.

(4) That plaintiff paid for breakfast in Hanksville.

(5) That when the Volkswagen left Hanksville, Sparks was driving, Serfass was in the right front seat, and plaintiff was in the back seat.

(6) That when the Volkswagen left Hanksville, plaintiff went to sleep and had no memory of anything after that for about a month following the accident.

The objection was based on the Utah Deadman Statute,[1] which prohibits testimony by the survivor as to

(1) any statement made by the deceased

(2) any transaction with such deceased or

---

1. 78–24–2 U.C.A. (1953). The statute in pertinent part prohibits the following from testifying:

A party to any civil action * * * when the adverse party in such action, * * * defends * * * as the * * * administrator * * * of any deceased person, * * * as to any statement by, or transaction with, such deceased, * * * or matter of fact whatever, which must have been equally within the knowledge of both the witness and such * * * deceased person, unless such witness is called to testify thereto by such adverse party * * * defending, in such action * * *.

(3) any matter of fact whatever, which must have equally been within the knowledge of both the witness and such deceased person.

The trial court allowed the plaintiff to testify to the matters listed above, reasoning that the Deadman Statute did not cover happenings and incidents which were subject to observation not only of the witness but others as well. As to part 3, the all-embracing prohibition, the court ruled that this added nothing to the other two provisos under the doctrine of *ejusdem generis*.

The Utah courts have recognized that the Deadman Statute limits the introduction of testimony which might be valuable in ascertaining the truth, and thus that it should be narrowly construed. Morrison v. Walker Bank & Trust Co., 11 Utah 2d 416, 360 P.2d 1015, 1017 (1961). *See also* Cook v. Gardner, 14 Utah 2d 193, 381 P.2d 78, 80 (1963). At the same time, the Utah courts have not had occasion to clearly define the term "transaction" as used in the statute. The first subsection of the statute noted above has no application since no testimony purporting to be that of Serfass was related.

As to the third (the all-embracing) subsection, the interpretation given, namely, that it merely modifies and restricts the application of the first two bases, appears reasonable. *See* Maxfield v. Sainsbury, 110 Utah 280, 172 P.2d 122, 125 (1946); Morrison v. Walker Bank & Trust Co., *supra*, 360 P.2d at 1018; Wolfe, Competency of Witnesses in Utah to Transactions With Deceased, Insane, or Incompetent Persons, 13 Colo. L.Rev. 282, 292 (1941).

This leaves the question whether plaintiff was barred from testifying by the prohibition against testimony as to "any transaction with such deceased."

The narrow construction which the trial court gave to the statute is not out of harmony with the decisions of the Supreme Court of Utah. Cook v. Gardner, 14 Utah 2d 193, 381 P.2d 78 (1963). To the same effect is Morrison v. Walker Bank & Trust Co., 11 Utah 2d 416, 360 P.2d 1015 (1961), and Maxfield v. Sainsbury, 110 Utah 280, 172 P.2d 122, 125 (1946). In that case it was said that the purpose of the statute is prevention of false testimony by the surviving party. In that case the court added:

> * * * Furthermore, the statute seeks to put the two parties upon terms of equality in regard to giving evidence of the transaction. It was never intended that this section should be used for the purpose of suppressing the truth. On the contrary, the statute's sole purpose is to prevent the proving by false testimony of claims against the estate of a deceased person.[2] *Id.*

The writers have almost universally condemned the application of the statute in a manner which prevents full presen-

2. *See also* J. H. Wolfe,* Competency of Witnesses in Utah to Transactions With Deceased, Insane or Incompetent Persons 13 Colo.L.Rev. 282, 283 (1941):

> Nearly all states provide by statute that testimony of the survivor of a transaction with a decedent shall not be admissible against the latter's estate. Despite this universality, Dean Wigmore finds the doctrine reminiscent of antiquity—unfair, arbitrary and unsupported by reason. It is the sole survivor of the now discarded rule which disqualified interested persons as witnesses. It is Wigmore's opinion that the entire doctrine should be done away with and certainly that changes be made to remove the endless quib-
>
> bling of lawyers and courts over a rule that accomplishes no good and works much injury.
>
> * At the time a Justice, Supreme Court of Utah.

The Utah cases do not specifically deal with a problem similar to the present one. In addition to *Maxfield*, *Morrison* and *Cook*, we have examined Startin v. Madsen, 120 Utah 631, 237 P.2d 834 (1951), and Sine v. Harper, 118 Utah 415, 222 P.2d 571 (1950). Most of these cases had to do with whether the witness was to be regarded as an adverse party, and in each instance a narrow construction was given to this term.

tation of the facts, and the criticism usually found is that it produces more injustice than justice. It is the positive and uncompromising manner of its operation and the fact that it is obstructive and irrational which is criticized most.[3] Wigmore's criticism is most frequently cited. II Wigmore on Evidence § 578, at 697. It is, according to him, a survival of the old doctrine of disqualification as a result of interest. Wigmore further states:

> As a matter of policy, this survival of a part of the now discarded interest-qualification is deplorable in every respect; for it is based on a fallacious and exploded principle, it leads to as much or more false decision than it prevents, and it encumbers the profession with a profuse mass of barren quibbles over the interpretation of mere words.

■ The defendant argues that an auto accident is a "transaction" and hence it follows that an adverse party in such a case is precluded from testifying. Utah has not passed on the precise question. It would appear, however, that a number of courts hold that an automobile collision is a transaction as that term is used in the Deadman or survivor statutes. But even a larger number of cases hold that an automobile accident is not a transaction in this context. Even, however, if we were to hold that Utah is likely to rule that it is a transaction, the case would not be solved for the testimony here in dispute does not pertain to an automobile accident or collision. Rather, it is concerned with events which *preceded* the collision. Reduced to its very lowest terms, the matter in dispute is limited to plaintiff's testimony as to the seating arrangement when the car left Colorado, the fact that decedent Sparks paid for a tank of gasoline in Hanksville, Utah, and that plaintiff paid for breakfast in Hanksville. Also in dispute is the seating arrangement when the parties left Hanksville. There can be no legitimate objection to the testimony that Sparks paid for gasoline at Hanksville or that plaintiff went to sleep and had no memory of anything after leaving Hanksville for about a month following the accident, since these are not matters that can, on any rational basis, be regarded as a transaction between the plaintiff and Serfass. Hence, it boils down to the payment by the plaintiff for breakfast in Hanksville and the fact that decedent Sparks was driving when the parties left Hanksville. This latter item also seems remote and unrelated to the estate of Serfass.

The only matter left to consider, then, is whether the circumstances in their entirety rather than individually are such that the trial judge should have excluded them individually or as a whole. From a reading of the Utah decisions and from a consideration of the philosophy of this statute, we are of the opinion that it was open to the trial judge to conclude that the matters were admissible and were not shielded by the Deadman Statute; that to allow the defendant to invoke it would result in suppression of truth and justice.

## II.

■■ Under Utah law a person's status as a guest or as a paying passenger depends on the purpose of the trip, that

---

3. *See* McCormick, Evidence § 65 at 143 (1954) as follows:

> Most commentators agree that here again the expedient of refusing altogether to listen to the survivor is, in the words of Bentham, a "blind and brainless" technique. In seeking to avoid injustice to one side, the statute-makers have ignored the equal possibility of injustice to the other. The temptation of the survivor to fabricate a claim or defense is obvious enough, so obvious indeed that any jury will realize that his story must be cautiously heard. A searching cross-examination will usually, in case of fraud, reveal discrepancies in the "tangled web" of deception. In any event, the survivor's disqualification is more likely to balk the honest than the dishonest survivor. One who would not stick at perjury will hardly hesitate at suborning a third person, who would not be disqualified, to swear to the false story.

is, social or business and whether compensation was paid. *See* Smith v. Franklin, 14 Utah 2d 16, 376 P.2d 541 (1962); Jensen v. Mower, 4 Utah 2d 336, 294 P.2d 683 (1956). As noted above, there is some evidence in the instant case which justified submission of this issue to the jury with appropriate instructions. All of the evidence originated with the plaintiff and showed that the whole object of the trip was transportation and that there was not present any social or friendship aspect. In this respect it is unlike Greenhalgh v. Green, 16 Utah 2d 221, 398 P.2d 691 (1965), in which the parties were deer hunting. Where the social aspect is the predominant feature, the payment of compensation will not eliminate the guest statute and render the occupant a paying passenger.

We simply hold at this time that it was not error to submit the question to the jury on the basis of evidence before the court. We do not hold that the issue is not an open one to be fully tried in the event of retrial of the case because we recognize that following a ruling on the Deadman Statute there may be evidence from the defendant on this question. Regardless of this, however, the issue should be tried anew and if it is submitted to the jury, the submission should be on the basis of appriate instructions.

### III.

Plaintiff argues that the Colorado guest statute rather than that of Utah applies to the case since the travel arrangements were made in Colorado. Consequently, so the argument goes, the burden of proving that plaintiff was a guest rested on defendant so that the trial court's instruction placing the burden there was not erroneous. We must disagree with this, however, because Utah and not Colorado law governs.[4] The conflicts is axiomatic that in diversity cases federal courts apply the conflicts rule of the state in which they sit.[5] The conflicts rule which has been adopted by the Supreme Court of Utah is the *lex loci* rule.[6]

The Utah rule as to burden of proof with respect to the status of guest within the meaning of the guest statute is set forth in the case of Eyre v. Burdette, 8 Utah 2d 166, 330 P.2d 126 (1958), which held that the plaintiff had the burden of proving that he was not a guest. The Supreme Court of Utah held that the plaintiff's evidence failed to establish that a consideration had been paid for the transportation, and said:

> It should be further observed that appellant having alleged that decedent was a passenger he had the burden of establishing the fact. However, appellant not only failed to sustain his burden, but failed to produce any competent evidence to support said allegation. *Id.,* 330 P.2d at 130.

Plaintiff would distinguish *Eyre* on the basis that the plaintiff there alleged in his complaint that he was a passenger

---

4. The trial court did not purport to follow the law of Colorado and thus this argument is an attempt to justify the trial court's ruling.

5. Klaxon v. Stentor Electrical Manufacturing Company, 313 U.S. 487, 496–497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Haury v. Allstate Insurance Company, 384 F.2d 32, 34 (10th Cir. 1967); Smith v. Greyhound Lines, Inc., 382 F.2d 190 (10th Cir. 1967).

6. In several cases the Utah Supreme Court has looked to the place of the accident to determine under their applicable guest statute whether the defendant's conduct was so reckless as to entitle the plaintiff-

guest to a recovery. *See, e. g.,* Wood v. Taylor, 8 Utah 2d 210, 332 P.2d 215 (1958); Hudson v. Decker, 7 Utah 2d 24, 317 P.2d 594 (1957); Shoemaker v. Floor, 117 Utah 434, 217 P.2d 382 (1950). In *Hudson,* for example, the court applied Idaho's guest statute where the accident occurred in Idaho, even though the parties were Utah residents. *See also* Velasquez v. Greyhound Lines, Inc., 12 Utah 2d 379, 366 P.2d 989 (1961). *Compare* Broadwater v. Coleman, 224 F.2d 186 (10th Cir. 1955), in which this Court applied the Kansas rule with respect to burden of proof in a guest statute case.

and not a guest and that no such allegation was made in the complaint at bar. We are unable to perceive any evidence which persuades us that the defendant waived the objection either before or during the trial. Counsel for defendant requested an appropriate instruction and the trial court refused to give it, proceeding instead to charge the jury that the burden was on the defendant.

We are unable to say that the error is harmless because the evidence on the subject of guest v. passenger is circumstantial, and in view of the fact that the balance was a delicate one, the jury could very well have determined the matter differently if a correct instruction had been given. Therefore, we must hold that the error was clear and that it requires reversal.

### IV.

The trial court also failed to instruct the jury that the representative of Serfass could be held liable only if Sparks was driving the vehicle as his agent, whereby the negligence of Sparks could be imputed to him. Under the Utah law there is a presumption of control and direction based on the fact that the owner is an occupant of his own car.[7] This deficiency in the charge was not objected to by defendant and so under Rule 51 it can be regarded as waived. Therefore, this failure would not justify a reversal. However, since there is likely to be a new trial, we deem it necessary to mention this.

### V.

Finally, defendants argue that the Utah survival statute, U.C.A. § 78-11-12 (Supp.1969), contains a proviso which itself bars the action. The cited section provides that the cause of action shall not abate upon the death of the

wrongdoer or injured party, and then goes on to provide:

> * * * [H]owever, that the injured person or the personal representatives or heirs of one meeting death shall not recover judgment except upon some competent satisfactory evidence other than the testimony of said injured person.

It cannot be said that the judgment rests upon the uncorroborated testimony of the plaintiff. There was an eyewitness to the accident and the patrolman corroborated the testimony of plaintiff. We do not read the statute as requiring that there be independent evidence sufficient to establish the case. We have not been cited to any Utah decisions which so hold. Therefore, we conclude that this argument is not meritorious.

The judgment is reversed, and the cause remanded for further proceedings.

---

7. Fox v. Lavender, 89 Utah 115, 56 P.2d 1049, 1057–1058 (1936). *See also* Hall v. Blackham, 18 Utah 2d 164, 417 P.2d 664 (1966). The *Fox* court also noted that:

> If the presumption of agency is indulged, it throws upon the proper parties the burden of producing evidence to negative the relationship rather than upon the plaintiff to produce evidence to prove it. Fox v. Lavender, *supra.*